Reese, J.
delivered the opinion of the court.
The prisoner was indicted for making a false entry on the books of the Union Bank with the intention to defraud the bank. *488 The indictment is founded upon the 22d section of, “ail act to charter the Union Bank of the State of Tennessee,” 1832, ch. 2. That section enacts, “that if the Cashier or any other of the officers, agents or servants of said corporation, shall -embezzle, and without authority from the President and Directors of said Bank, appropriate any of the funds of said corporation to his own use, with intent to cheat and defraud the President, Directors and company of said bank, or shall fail to make correct entries, or shall make false entries upon the books of said bank, with intent to defraud said bank or anjr other person whatsoever, said officer, agent or servant of said bank, shall be held and deemed guilty of felony, and shall upon conviction thereof, be sentenced to confinement in the jail and penitentiary of this State, for a period not less than five nor more than twenty years.” The indictment sets forth, that “Thomas L. Budd being then and there a person employed as clerk of the individual ledger, the same being a book of the bank thereinafter named, in the bank of the president, directors and company of the Union Bank of the State of Tennessee, &c., and the said Thomas L. Budd being then and there such clerk as aforesaid; and it being his business by virtue of such employment as such clerk, then and there to make correct and true entries of the sums of money deposited in said bank by the individual depositors on the day and year aforesaid,” &c. The indictment here proceeds to set forth the false entry.
Two questions have been discussed, which we consider of most importance in this case.
1st. Whether the prisoner, in 'the indictment before us, has been properly and sufficiently charged within the terms of the 22d section of the statute above quoted, and,
2dly. Whether that section, with reference to our constitution, can be regarded and enforced as the “law of the land.”
1st. The penalties imposed by the section of the statute in question affect the cashier, or any other of the officers, agents or servants, of the corporation, clerks not being mentioned nominatim. Dictionaries, legal and literary, have been referred to, on both sides of the question, to prove that clerks, in banks, are, and axe not, properly comprehended and described *489 by the terms officers, servants or agents. And the 5th section of the same act has been referred to, to show that in the opinion of the legislature the terms “officers” and “servants” did not properly include clerks; for that section empowers the directors to appoint such “officers, clerks and servants under them as shall be necessary,” &c. Giving to the terms officers, agents and servants, as used in the 22d section, a reasonable construction, we cannot doubt that the duty of clerk would fall within the just meaning of some one of them; within which, it is not necessary to determine; because the indictment, in this case, does not aver that the prisoner at the bar was the officer, agent or servant of the bank. It is contended, however, on the part of the State, that it is not necessary that an indictment should literally pursue the terms of the statute upon which it is founded, but if words fully equivalent in meaning to those used in the statute, or more comprehensive, be employed in an indictment, the indictment will be held to be valid. This is indeed correct, and held to be so, in the case of the State vs. Peek, 2 Hum. and in other cases. But these cases have reference to the terms used in describing the mode, manner, and motives constituting or accompanying the offence; and it may well be doubted, whether this principle will apply to a case where a statute affects persons as connected with specified offices, or employments; there, it would seem, that whatever other office or employment may be stated in the indictment, it should be averred to be the office or employment mentioned and described in the statute. But be that as it may, the term clerk is of such varied import, that we are not at liberty to hold that “clerk,” and especially “clerk of the individual ledger,” is equivalent to officer, agent or servant. Besides, there is no direct averment that the prisoner was employed by the bank as clerk; that, at most, can only be gathered by intendment. He may have had charge of the book called the individual ledger, for aught that directly appears, not by employment under the bank, but by employment under some one who was, himself, an agent or servant of the bank. Although the book belonged to the bank, he may have been employed as a clerk, not of the bank, but of some individual officer, for any thing that is aver *490 red- We think, therefore, that the defendant was not properly charged under the statute, and that the judgment must be arrested.
2d. But a graver and weightier question. exists. That question is, whether, in reference to our bill of rights, the 22d section of the act referred to, can be regarded and enforced as the “law of the land.” And it may be remarked, as preliminary to this investigation, that it has not been contended here, on the part of the State, that any argument in favor of the validity of the section in question can he founded upon the connection in which it exists, as part of a law granting a charter to the Union Bank; in other words, that it is not to be regarded as part of the contract between the State and that corporation; and, even, if so regarded, that it would derive no additional validity from that circumstance. This has been properly conceded; for surely the State, as a contracting party, would have no greater right to create the felony in question, in reference to the officers of the Union Bank, than it would possess independently of such attitude. The section twenty-two, then, is to be regarded as if it stood alone; and as if, aloof from all connection with the charter of the Union Bank, it had been a statute of one section, enacted, after that institution had full corporate existence, with aviev/to make the felony in question, affecting the officers, agents and servants of that institution. It is an act, then, creating a new felony in relation to the officers, servants and agents of the Union Bank, and to them only. Is this a “law of the land” in the sense of our bill of rights? Law, to use the definition of Mr. Justice Blackstone a little modified, to suit the genius of our institutions, “is a rule of civil conduct prescribed by the law making power of the State, commanding what is right or prohibiting what is wrong.” This, then, is a rule of conduct prescribed by the legislature, and directed to the officers, agents and servants of the Union Bank, prohibiting them from doing what is wrong. What is the Union Bank? It is a legal person, having capacity to sue and be sued; to own property, and to employ agents and servants, This, then, is a rule mandatory to the servants and agents of this legal person. It expends all its force upon them. This statement of the ques- *491 lion, merely, goes far, it seems to us, to supersede the necessity of elaborate reasoning on the subject. Not, indeed, upon the ground that the officers, servants and agents of this legal person, the bank, are more or less numerous, but because the officers., agents and servants of this person only, and not of any other persons, are comprehended or affected. If the felony were enacted with regard to the clerks, servants and agents of a merchant, to deter them from embezzlement and false entries, would it be imagined, for a moment, that it would be regarded as the “law of the land,” and consistent with the bill of rights? If the felony affected only all the clerks of all the merchants of Nashville, or of Davidson county, or of Middle Tennessee; would that, in either case, be “the law of the land”? It is believed, none would so contend. And, why not? Simply because the law of the land is a rule alike embracing, and equally affecting all persons in general, or all persons who exist, or majr come, into the like state and circumstances. A partial law on the contrary embraces only a portion of those persons who exist in the same state, and are surrounded by like circumstances. If peculiar felonies, affecting all the people, or certain of the public officers, of East Tennessee, only, were held to be “the law of the land,” it would be difficult to say for what object that clause was inserted in the bill of rights. One of its objects has been stated, in various adjudications in our State, to have been to protect the feeble and the obnoxious from the injury and injustice of the strong and the powerful, and, in general, to protect minorities from the wrongful action of majorities. This being its scope and purpose, would it not interdict the legislature from passing such an act as is last above referred to, for instance, creating certain acts of nonfeasance or malfeasance of the Register of the Western District, although a public officer, a felony, leaving the Register of Middle Tennessee, East Tennessee, &c., unaffected by it? Certainly it would. And why? Because the law would not treat, similarly, all who were in like circumstances; it would therefore' be partial, and of course not the law pf the land. At the time of the enactment of this statute, there were other banks having actual corporate existence, as we can see from our sta *492 tute book, with like faculties and functions. They were not embraced; other banks had a potential existence, that is, the legislature had power to make others. The act, however, em-> braces the Union Bank alone and its servants, See., and not alt who are, or may be in the like state and circumstances. If, as in Alabama and Arkansas, the legislative power being constitutionally expended by the creation of one bank, a felony had been created, limiting itself in its terms to the bank established, we do not doubt, that under such a bill of rights as ours, such law would be constitutional. We do not think the law in question partial, because merchants’ clerks, or the public officers, called clerks, were not embraced; but because, the officers, agents and servants of banks in general, persons in like situation and circumstances, were not embraced. It matters not how few the persons are, if all, who are, or may come into the like circumstances and situations, be embraced, the law is general, and not a partial law. The principles here set forth are not new in this State; they are little more than the re-announcement of what is said in 2 Yerg. 260, 554, 559, 4 Yerg. 202, 5 Yerg. 320, 10 Yerg. Jones vs. Perry. Thpse cases, indeed, refer themselves to the operation of partial laws upon civil rights and remedies, while this case happens to be the application of our bill of rights to a partial law creating a felony. But the principles are identical, and there is certainly no reason why the protection intended to be extended to individuals by the bill of rights, should not be as effective, where their liberty, as well as their property, may be exposed to the operation of a partial law.
We are duly sensible of the importance of the case before us, and of the magnitude and value of the interests involved. Although the bank, no doubt, mainly relies, for its safety, upon the probity of its officers, and the amount of their bonds, and the solvency of their sureties, still the facts upon this 'record establish, that they need, also, the safe-guards intended to, have been thrown around them by the penalties created in the 22d section of their charter; and we have the satisfaction to believe, that the interval is a brief one, which shall elapse, before those safe-guards shall be restored, and made effective in a manner *493 consistent with the public liberty- As to the co-ordinate department, to whose enactment we feel unable to give effect, we cheerfully acknowledge, that their intelligence, and numbers, the high motives and sanctions under which they, too, act, impose upon us the obligation, when comparing the result of any deliberation of theirs, with the paramount law, which governs us all, to be well satisfied, that in declaring a statute invalid and void, we but obey the mandate of the constitution. But when so satisfied, it requires but ordinary virtue and firmness in this court, so to pronounce. In this case, we are thus satisfied, and must thus pronounce.